CHISHOLM–RYDER COMPANY, Inc.,
John William Ward and Margaret L.
Ward, Plaintiffs,

v.

PAULSON BROTHERS INDUSTRIES,
INC., and T. Howard Paulson,
Defendants.

Civ. A. No. 3180.

United States District Court
W. D. Wisconsin.

Sept. 30, 1960.

Theodore E. Simonton, Cazenovia, N. Y., Joseph G. Werner, Madison, Wis., for plaintiffs.

John D. Gould, Minneapolis, Minn., Warren P. Knowles, New Richmond, Wis., for defendants.

STONE, District Judge.

### Findings of Fact

1. Plaintiff Chisholm-Ryder Company, Inc., commenced this action on January 30, 1959, against defendant T. Howard Paulson for infringement of United States Letters Patent No. 2,587,-553 and United States Letters Patent No. 2,675,663.

2. By Amended Complaint, John William Ward, patentee of U. S. Patent No. 2,675,663, and Margaret L. Ward, sister of John W. Ward, were properly added as parties plaintiff because of their reversionary interest in the patents in suit; and by said Amended Complaint, Paulson Brothers Industries, Inc., was properly added as a party defendant.

3. Chisholm-Ryder Company, Inc., is the owner by assignment of the entire right, title and interest in and to the patents in suit, U. S. Patents Nos. 2,587,-553 and 2,675,663, subject to a reversionary interest in said patents in John William Ward and Margaret L. Ward under the assignment agreements.

4. Chisholm-Ryder Company, Inc., is a New York corporation having its principal place of business at Niagara Falls, New York.

5. Paulson Brothers Industries, Inc., is a Wisconsin corporation having its principal place of business at Clear Lake, Wisconsin.

6. Plaintiffs allege that the Paulson Bean Picker infringes Claims 1, 2, 3 and 4 of Patent No. 2,587,553 and Claim 1 of Patent No. 2,675,663.

7. Defendants were given due notice of the alleged infringement by letters dated December 11, 1958, and January 21, 1959.

8. The first patent in suit, Leila Ward Patent No. 2,587,553, issued February 26, 1952, on an application filed February 12, 1948, is for a machine for picking snap beans directly from plants rooted in the ground by a rake mechanism of special construction, referred to herein as the Rake Patent.

9. The individual T. Howard Paulson is a resident of Clayton, Wisconsin. The individuals John William Ward and Margaret L. Ward are residents of Vernon, New York. That T. Howard Paulson was engaged in promoting the Paulson Brothers Bean Picker during 1958 before the incorporation of the corporate defendant.

10. This Court has jurisdiction of the subject matter and the parties here involved.

11. United States Letters Patent No. 2,587,553 entitled "Bean Picker" was issued on February 26, 1952, upon an application filed February 12, 1948, by Leila

B. S. Ward, with six claims. Claims 1, 2, 3 and 4 of United States Letters Patent No. 2,587,553 are here involved in suit. There is no claim by plaintiffs that defendants have infringed claims 5 and 6 of United States Patent No. 2,587,553.

12. Claim 1 of the Leila Ward patent, U.S. No. 2,587,553 is understood to embody the following elements in combination in a bean picker adapted to pick whole bean pods direct from bean plants rooted in the ground: a mobile frame adapted to be transported forward along a row of bean plants; a rotary or reel-type rake mounted on said frame supported by wheels substantially longitudinally thereof for movement with respect to said frame. The axis of the reel is inclined upwardly and forwardly of the machine, and means are provided for independently regulating the heights of the front and rear ends of the frame so as to allow for adjustment of the height and inclination of the reel in relation to the ground; said rake including longitudinally spaced tines adapted to engage the bean plants from one side thereof in succession as the frame moves forward; means on said frame and operatively connected to said rake for moving said rake relative to said frame in such manner that the tines move in an endless path, said path having a portion adjacent said one side of the bean plants in which the tines move within and up the bean plants; said rake being so constructed and arranged that the successive tines make initial engagement with each bean plant progressively along the plant from the top down; and means for catching the severed bean pods as they fall toward the ground. The machine is provided with a sub-frame tiltably connected to the main frame and carrying ground-engaging pans located on either side of the longitudinally extending plant passage, which pans house belt conveyors that collect the bean pods. In operation, the sub-frame is adjusted so that the rear ends of the pans are in contact with the ground at either side of the row of bean plants and the pans are inclined slightly upwardly and forward-ly so as not to dig into the ground as the machine is drawn forward. In this position, the reel is located at the right side of the row and is adjusted so that the tines at the front end of the reel contact the bean plants near their uppermost ponds and the tines at the rear end contact the plants near their lowermost pods. The reel is rotated so that the tines approach the right side of the row and move upward within the bean plants.

13. Claims 2, 3 and 4 of the Leila Ward Patent U.S. No. 2,587,553 are similar in scope to claim 1, but are more detailed in the following respects: Claims 3 and 4 more specifically define the rake as being a rotary rake; and claims 2 and 4 provide that the rake is inclined upwardly and forwardly with respect to the frame so that successive tines will make initial engagement with each bean plant progressively along the plant from the top on down.

14. The structures of the Leila Ward Patent, U.S. No. 2,587,553 were the direct result of an experiment by Leila Ward as follows: Standing facing one side of a row of bean plants and holding an ordinary garden rake with its head on the other side of the row at an angle to the ground, Leila Ward pulled the rake through the bean plants in an upward motion, in short strokes, progressively getting lower into the bean plant until she had taken the beans off of the bush.

15. The essence of the invention of the Leila Ward patent is alleged to reside in two features: One, that the picking tines moves upward within the bean plant, and two, that the picking mechanism be constructed and arranged so that successive tines make initial engagement with the bean plant progressively from the top down.

16. A tractor-powered pull-type machine embodying Mrs. Ward's invention was built during the winter of 1947-8. This machine was successfully tested in New York during the 1948 bean season, and attracted the attention of the local press, which publicized it at that time.

This 1948 machine was constructed substantially as shown in the drawings of the rake patent, and was operated both with the type of rake shown in Figures 1–7 and with the reel-type rake shown in Figures 14 and 15 of that patent.

17. Snap beans, or string beans, as they were previously called, have only recently become a major vegetable crop. In 1899, there were 453,841 acres of dried beans in comparison with 15,004 acres of snap beans. In 1925, there were 30,980 acres of snap beans grown in the United States, New York State leading with 6,-370 acres and Wisconsin second with 3,-610 acres. Today, New York State alone grows approximately 40,000 acres, and there have been proportionate increases in the other bean-growing areas.

18. A snap bean picker must be capable of picking a multitude of small pods which hang down from the plant and which may be located anywhere from the top of the plant to a position where the blossom ends of the pods touch the ground on plants ranging from 12 to 24 inches in height, without pulling the plant from the ground, thereby carrying the unwanted plant stalk together with the plant root system and a quantity of dirt into the machine, and to harvest the snap bean pods from the plant without bruising or tearing the pod tissue. Snap beans are harvested at a stage of growth where the pods are soft and succulent and easily bruised or torn. If the pods are bruised or torn to any considerable extent, the product is unmarketable.

19. In the machine of the rake patent, it is the tip of the tine that accomplishes the removal of the pod from the plant and this occurs when the upward-moving tine tip strikes the stem by which the pod is attached to the plant. When the stem is struck, the pod flies off in a direction generally tangent to the radial position of the tine at the instant of impact. In this manner, the pods are removed from the plant without being bruised or torn. The progressive manner in which the plants are combed or raked accomplishes substantially complete removal of the bean pods while diminishing the tendency to uproot the plants from the ground.

20. The second patent in suit, John William Ward Patent No. 2,675,663, is for certain improvements on the machine disclosed and claimed in the rake patent, and issued April 20, 1954, on an application filed August 14, 1950, hereinafter referred to as the "moldboard patent". It covers alleged improvements on the rake patent.

A. The moldboard patent discloses four alleged improvements over the bean picker of the rake patent: a moldboard cooperating with the rotating picking reel; a gathering mechanism for raising the bean plants to an erect position as they enter the machine; a topping mechanism for cutting off the leafy tops of the erect bean plants; and a tine-cleaning mechanism embodying a "slotted grill". The gathering and topping mechanisms are located at the front of the machine in advance of the picking mechanism proper and are not included in Claim 1 of the patent. The tine-cleaning mechanism cooperates with the picking reel to keep the tines free of trash and is not included in Claim 1 of the patent.

B. The moldboard patent describes a bean-picking machine having two reels located on either side of a central conveyor so as to enable the machine to operate simultaneously on two rows of bean plants. The reels are mounted longitudinally of the machine, are provided with longitudinally spaced picking tines, and are inclined in an upward and forward direction, as in the rake patent. The machine is provided with two moldboards mounted on the conveyor frame so as to lie adjacent the picking reels and between the reels and the conveyor. Each moldboard has a surface curved substantially concentrically with the axis of its associated reel. Each moldboard surface extends longitudinally of the reel and its picking tines, and is inclined inwardly and upwardly from the reel toward the central conveyor. The lower longitudinal edge of the moldboard surface, hereinafter called the "fulcrum

edge", is located near the stalks of the plants during operation.

C. In operation, the reels are rotated toward the conveyor and, together with the fulcrum edges of the moldboards, define passages on either side of the conveyor through which the bean plants travel. As the machine moves forward, the lower edge of the moldboard acts as a fulcrum due to the action of the reel which bends the plants over that edge laterally of both the row and the moldboard, and thus toward the conveyor. In the moldboard patent, the fulcrum edge is inclined upward and forward, so that this bending takes place at progressively lower points on the plant.

21. The moldboard and its fulcrum edge perform three functions of primary importance, namely: (1) the bending of the bean plants over the fulcrum edge (the lower edge) of the moldboard creates a frictional resistance between that edge and the stems of the plants, which friction serves to hold the bean plants against being uprooted during picking; (2) the moldboard surface provides a relatively short minimum distance, of approximately one-half inch, between the tips of the rotating tines and the moldboard, which confines the plants and assures that the stems of substantially all of the bean pods will be struck by a tine tip, thereby snapping the pods off the plants at their stems; and (3) the laying of the bean plants on their sides over the fulcrum edge and laterally of both the row and the moldboard, controls the trajectory of the severed pods and results in the pods being tossed transversely of the machine toward the central conveyor.

22. In the machine of the rake patent, which has no moldboard, the bean pods may be thrown (1) away from the reel, or (2) around and over the reel, or (3) even nearly straight up. In order to permit the collection of these indiscriminately tossed pods, the machine of the rake patent has two conveyors, one closely adjacent each side of the single row of bean plants being picked. The ground-engaging pans of these conveyors assist in holding the bean plants against being uprooted during picking. In the machine of the moldboard patent, due to the trajectory control provided by the moldboard and its fulcrum edge, a single central conveyor suffices for two reels picking two adjacent rows; the frictional resistance exerted by the fulcrum edge serves to hold the bean plants against uprooting, and makes it unnecessary to employ the ground-engaging pans of the rake patent.

23. During the winter of 1948–9, J. W. Ward built a tractor-mounted, two-row bean picker having two picking reels. This machine included the moldboard and other alleged improvements of the moldboard patent. This machine was successfully tested in Texas in April, 1949, and in New York during the summer of 1949. It is shown in five photographs introduced in evidence as Exhibit 25, all of which were taken prior to August 13, 1949, and is illustrated and described in articles in trade journals published August 29, 1949, and September, 1949 (Exhibits 23 and 24). This 1949 machine was turned over to Chisholm-Ryder Company, Inc., in January, 1950, and served as a model for the bean harvesters subsequently built by that company.

24. The CRCO Bean Harvesters manufactured and sold or leased by Chisholm-Ryder Company, Inc., up to and including the most recent 1959 model examined by the Court during the trial, are made under both patents in suit, and embody the alleged inventions of Claims 1, 2, 3 and 4 of the rake patent and Claim 1 of the moldboard patent.

25. Chisholm-Ryder Company sold or leased 422 of these machines between October 1, 1952, and September 14, 1959 (the date of the trial), from which it received a gross income of just under $5,-000,000, including sales of spare parts. Up to September 14, 1959, Chisholm-Ryder Company had paid in royalties thereunder a total of slightly more than $218,000.

26. The warped surface of the moldboard of the Paulson Bean Picker is a curved surface, but it is not curved substantially concentrically with the axis of

the reel, as is the moldboard of the CRCO Bean Harvester. But in both machines, the minimum distance between the tip of each tine as it rotates and the moldboard surface is approximately one-half of an inch. This minimum distance is an important factor in the cooperative functioning of the tines and the moldboard surface.

27. The fulcrum edge of the moldboard of the Paulson Bean Picker is located parallel to the bottom of the conveyor pan, instead of being inclined upward and forward with respect thereto, as in the CRCO Bean Harvester.

28. Each of the elements of the picking mechanism of the Paulson Bean Picker is of the same type, has substantially the same measurements, bears the same relation to the other elements, and has the same functions as the equivalent element of the picking mechanism of the Chisholm-Ryder Bean Harvester.

29. Defendants started commercial use of their machine with four machines in Texas during 1958, and that since that time they have manufactured an additional 38 machines, 12 of which they have sold and 12 of which they have leased, the remainder being in defendant's possession at the time of the trial.

30. The Savage prior art patent, U.S. No. 371,372, discloses a bean harvester having a frame designed to be pulled down a row of bean plants to be harvested and a rotary picking reel or rake mounted on the frame longitudinally with respect to the direction of travel of the machine, said longitudinal reel or rake including longitudinally spaced tines or picking teeth adapted to move upward within the bean plants and to harvest beans therefrom. The structure of the Savage patent provides for an adjustment whereby the picking reel or rake can be inclined in an upwardly and forwardly direction with respect to the ground and maintained in such position during operation and forward movement of the machine. The Savage machine with its reel inclined as disclosed would inevitably provide progressive action of the picking reel with successive tines engaging the bean plant at progressively lower levels as the machine moves forward.

31. The Savage patent does not disclose the intended purpose of the inclination of the picking reel thereof; however, prior to the alleged invention of the Leila Ward patent, it was disclosed in the prior art that an upwardly and forwardly inclined picking reel would function to progressively pick plants from the top on down, and it was adequately disclosed in the prior art that progressively picking a plant from the top on down would provide a milder action upon the plant being harvested and minimize the pull tending to uproot the plant, which is the intended function of the inclination of the picking reel of the Leila Ward patent.

32. The Scott and Haskett patent, U. S. No. 1,303,120 was not a reference before the Patent Office during consideration of the application for the Leila Ward patent; and the Scott and Haskett prior art reference discloses the structure and function of the structure as claimed in the Leila Ward patent. The difference between the Scott and Haskett patent disclosure and the structure of the Leila Ward patent as claimed resides only in the intended use of the structure; the Scott and Haskett patent reference structure being disclosed as adapted to pick peas as compared to the disclosure of the Leila Ward patent being adapted to pick beans. The picking of peas is an art related to the picking of beans; and the Paulson Machine has been used to pick peas.

33. The Urschel prior art patent, U.S. No. 1,977,784, discloses a picking mechanism for bean plants which comprises a longitudinally disposed picking reel having longitudinally spaced tines mounted thereon, which reel is adapted to move upward within the bean plants to strip the bean pods therefrom and which picking reel or rake is disposed to the plants being operated upon so as to progressively pick the bean plants from the top down. The difference between the structure of the Urschel patent and the Leila

Ward patent is that the former provides for a pick-up mechanism which physically removes the bean plants from the ground and holds the bean plants in an upright position between belts and the picking mechanism thereof operates upon the bean plants held between belts rather than upon bean plants held rooted directly in the ground as in the latter patent. Although a feature of the Urschel patent reference is to remove the plants from the ground and maintain them in an upright position with respect to the ground by means of belts, this deviation from the Leila Ward patent does not vitiate the disclosure of the Urschel patent of the picking mechanism of the Leila Ward patent. Insofar as the picking mechanism of the Urschel patent is concerned, it makes no difference whether the plants are held between belts near the roots or whether the plants are held actually rooted in the ground.

34. In view of the disclosure of the Garst patent reference, U.S. No. 2,354,-112, and particularly in the light of the other prior art references, it would not be beyond the skill of an ordinary mechanic to modify the harvesting members of the Garst patent to comprise picking tines or teeth rather than whip lashes nor would it be beyond the skill of one ordinarily skilled in the art to provide the Garst patent structure with means for collecting the plant product when the Garst structure is used to harvest berries or seeds, which is disclosed as an intended function thereof. Upon such modifications, wholly within the skill of one ordinarily skilled in the art, the Garst patent reference anticipates the structure of the Leila Ward patent as claimed.

35. The structure of the Leila Ward patent as claimed and the function of that structure was previously disclosed in the prior art.

36. Claims 1, 2, 3 and 4 of United States Patent No. 2,587,553 are invalid as anticipated by and for want of invention over the prior art.

37. Insofar as there is a difference in the harvesting of snap beans as compared to dried beans or other vegetable crops, the difference resides primarily in the maturity of the plant product. Dried bean pods are very brittle; and it is the nature of the plant to open the pod up, even to the extent that dried beans left on the vines too long will burst open. Snap or green beans, on the other hand, are immature succulent pods and the pods are relatively solid. The same structure, in view of the difference in the maturity of the pod, which would shatter a dried bean pod or break open a pea pod would not necessarily shatter or damage a snap bean pod in the harvesting thereof. The picking tines of the bean picker revolve at a high speed and do burst a small per cent of the beans during the picking process.

38. The structures of the prior art, including the Savage patent reference, are adapted or could be adapted within the skill of one ordinarily skilled in the art to pick snap green bean pods. Any difference between the structures of the prior art and the Leila Ward patent, which might better adapt the latter for picking green bean pods as compared to other plant products, forms no part of the claimed invention of the Leila Ward patent; and forms no part of the Leila Ward patent disclosure. The Leila Ward patent disclosure is not necessarily limited to "snap green beans" but broadly discloses a "bean picker"; and likewise, the structures of the prior art are not necessarily limited to specific vegetable crops but disclose structures capable of operating upon snap green beans.

39. Any difference or improvement in the Leila Ward patent disclosure over the prior art must reside in specific details thereof which form no part of the claimed invention and which have not been appropriated by defendants.

40. The most significant improvement of the Leila Ward patent disclosure resides only in the specific structure of Figs. 1-7 which provides for a pair of bar rakes moving in an elliptical path and operating upon a single row of bean plants; and which structure provides a milk action upon the bean plants to the extent that several pickings of these

same bean plants are feasible. This structure and function provides no part of the claimed invention and has not been appropriated by defendants.

41. The Grether structure, as disclosed in the photographs Ex. 45, constitutes art prior to the alleged invention of the Leila Ward patent, U.S. No. 2,587,-553; and because this development was subsequently disclosed to the public in the Grether patent, U.S. No. 2,641,888 such development can be considered anticipation and not an abandoned experiment.

42. The individual elements constituting the alleged invention of the Leila Ward patent as claimed in suit were old in the prior art; and the combination of these elements functioning as in the Leila Ward patent structure was old in the prior art. The combination of elements of the Leila Ward patent structure does not produce any unexpected result.

43. Claims 1, 2, 3 and 4 are broader than any improvement in the Leila Ward structure over the disclosures of the prior art.

44. Claims 1, 2, 3 and 4 are invalid as not amounting to patentable invention over the prior art.

45. Insofar as the alleged infringing Paulson Machine incorporates the structure of the Leila Ward patent, it likewise incorporates the structures and knowledge of the prior art.

46. Of the nineteen claims of the John W. Ward patent, U.S. No. 2,675,663, only claim 1 is involved here in suit; and there is no claim by plaintiffs against defendants of infringement of claims 2–19 of United States Patent No. 2,675,663.

47. The alleged invention of claim 1 of United States Patent No. 2,675,663 is characterized to reside in the provision of a moldboard having a longitudinally extending inwardly and upwardly inclined surface adjacent to the picking mechanism of a snap bean picker for the purpose of cooperating with the picking mechanism to lay the bean plants on their sides laterally of the moldboard during the picking operation over a longitudinal edge of the inclined surface as a fulcrum.

48. The picking reel of the John Ward patent was old in the prior art Leila Ward patent. It was old in the prior art to provide an inwardly and upwardly inclined surface adjacent to a picking reel for the purpose of laying the plant product on their sides laterally of the inclined surface during the picking operation over a longitudinal edge of the inclined surface as a fulcrum.

49. The important factor in the cooperative functioning of the tines and the moldboard surface of the John Ward structure is a "minimum distance" between the tines and the moldboard surface. Claim 1 does not define or provide for any structure making the factor of a "minimum distance" between the tines and the moldboard surface a limitation or part of the claimed invention of claim 1 of U.S. Patent No. 2,675,663; and in this respect, claim 1 fails to define the alleged invention of the John Ward patent.

50. Certain features of the John Ward moldboard asserted by plaintiffs is the moldboard's function in relation to the conveyor. Claim 1 fails to define a conveyor and fails to define any relationship of the moldboard to a conveyor; and in these respects, claim 1 fails to define the alleged invention of the John Ward patent.

51. It is an alleged feature of the John Ward patent that the bean plants are bent laterally over the moldboard and over a longitudinal edge thereof as a fulcrum. A part of the John Ward patent structure is a "comb-like grill" which together with the moldboard defines a confined space; and the "comb-like grill" functions to assist the lateral bending of the bean plants over the moldboard upon the bean plants entering this confined space. Claim 1 of the John Ward patent fails to define the comb-like grill element or any other equivalent means for accomplishing the function of said element; and claim 1 of the John Ward patent fails to particularly locate the inwardly and upwardly inclined surface

496

of the moldboard such that the structure as defined in claim 1 will necessarily accomplish the intended function of claim 1 or the intended function of the alleged John Ward invention.

52. Claim 1 of the John Ward patent is invalid because it does not particularly and distinctly define the alleged invention by structure distinguishing it over the prior art.

53. The Guyle patent, U.S. No. 1,975,-572 is a pertinent anticipatory reference; and it anticipates the alleged moldboard feature of the John Ward invention as it is defined in Claim 1 of U.S. Patent No. 2,675,663.

54. Any improvement in the moldboard feature of the John Ward patent must reside in the particular form of the moldboard and its relationship to the picking reel and conveyor. It is not determined whether or not such particular form and relationship might involve patentable invention because claim 1 of the John Ward patent fails to define the improvement of the John Ward moldboard feature and it fails to define any structure distinguishing claim 1 over the prior art.

55. Claim 1 of U.S. Patent No. 2,675,-663 is invalid both because it fails to particularly define the invention of the John Ward moldboard feature and because it is anticipated by the prior art.

56. The alleged infringing machine before the Court was a bean picker manufactured by Paulson Brothers Industries, Inc. and identified as Serial No. 59703 which is referred to herein as the Paulson Machine. The Paulson Bean Picker is a tractor-drawn, two-row machine. Its picking mechanism comprises two reels located at either side of a central conveyor, as in the moldboard patent. Each reel is mounted longitudinally of the machine, is provided with longitudinally spaced picking tines, and is inclined in an upward and forward direction. The machine is provided with two members, called "deflectors" by defendants, which are mounted on the conveyor pan so as to lie adjacent the picking reels and between the reels and the conveyor. Each of these members has a warped surface that extends longitudinally of the reel and its picking tines, and is inclined inwardly and upwardly from the reel toward the central conveyor, and each is provided with a pronounced lower longitudinal edge that is located near the stalks of the plants during operation.

57. The structure of the alleged infringing Paulson Machine in controversy with respect to claim 1 of U.S. Patent No. 2,675,663 involves the picking reel of the Paulson Machine and an inclined surface denominated by defendants a "reflector". The "reflector" of the Paulson Machine is in effect a baffle and shall be referred to as such. The picking reel of the Paulson Machine was old in the art prior to the John Ward invention and also prior to the Leila Ward invention. The baffle of the Paulson Machine functions as an inclined plane to convey beans to the conveyor of the Paulson Machine. This is an obvious expedient well within the knowledge of any one skilled in the art.

58. The baffle of the Paulson Machine differs both structurally and functionally from the moldboard of the John Ward patent. The baffle of the Paulson Machine does not include a vertical wall comparable to wall 152 of the moldboard of the John Ward patent; the inclined surface of the baffle of the Paulson Machine is not an arcuate concave wall and is not disposed in concentric relationship with the picker shaft as is the concave wall 154 of the John Ward moldboard; the baffle of the Paulson Machine includes a longitudinally extended rod welded to the lower edge of the inclined surface thereof and such a rod forms no part of the structure of the John Ward moldboard. The baffle of the Paulson Machine does not function to lay bean plants on their sides laterally of any "mold board" during the picking operation over a longitudinal edge of the inclined surface, forming the baffle, as a fulcrum. The baffle of the Paulson Machine does not appear to function to hold

bean plants in the ground; an alleged function of the moldboard of the John Ward patent.

59. The terminology moldboard in claim 1 must be limited to a surface of curved or concave form which has not been appropriated in the Paulson Machine.

60. Plaintiffs have failed to prove that the baffle of the Paulson Machine functions as defined in claim 1; namely, that the baffle of the Paulson Machine co-operates with the picking mechanism to lay the bean plants on their sides lateral-ly of the baffle over a longitudinal edge as a fulcrum. If any such bending could occur in the Paulson Machine, it would involve only an occasional low lying branch and which would not be a pri-mary function capable of infringing the claimed invention of the John Ward patent; and, any such bending would be over the rod welded to the lower edge of the Paulson baffle and would not be over a longitudinal edge of the inclined sur-face of the baffle as a fulcrum.

61. Defendants have presented clear and convincing proof of the invalidity of the claims of U.S. Patent Nos. 2,587,553 and 2,675,663 in suit.

62. The structure and function of the baffle of the Paulson Machine is disclosed in the prior art, and claim 1 is invalid as anticipated by the prior art.

63. Defendants have not infringed claim 1 of the John Ward patent, U.S. No. 2,675,663.

64. Of the prior art relied upon by defendants in connection with the Leila Ward patent claims in suit, only the Savage reference was of record as be-fore the Patent Office.

65. Several factors are attributable to the commercial success of the CRCO Bean Harvester apart from the alleged inventions of the Ward patents in suit; namely, the fact that seed men developed a preferred bean for mechanical bean harvesting after the Ward inventions and approximately in 1954, and the fact that Chisholm-Ryder, Inc., itself contributed substantially to the development of the Ward bean picker into a commercially successful machine. The original struc-ture of the Leila Ward patent was never produced commercially and could not be conceived to be a commercial success. Although the structure of the CRCO Bean Harvester is in most respects simi-lar to the structure of the John Ward pat-ent, the specific structure of the John Ward patent apparently was not a com-mercial success. The gathering mech-anism of the John Ward patent apparent-ly contributed to the collection of stones which made it commercially undesirable; and the cleaning mechanism of the John Ward structure required modification by Chisholm-Ryder Company, Inc., to make a commercially successful bean harvester.

66. The CRCO bean harvester was not a commercially successful machine, in terms of quantity of machines built for use, until 1957, approximately 10 years after the conception of the Leila Ward invention. For 7 years Chisholm-Ryder Company had done considerable develop-ment work, with the crude and commer-cially unfeasible Ward machines. It took 7 years of this development work by Chisholm-Ryder Company to produce the machine it sold in 1957.

67. Plaintiff Chisholm-Ryder Com-pany, Inc., commenced this action against T. Howard Paulson without sufficient information concerning the alleged in-fringing Paulson Machine to the extent that it charged infringement of claims 2, 3 and 6 of U.S. Patent No. 2,675,663 without justification.

Conclusions of Law

1. This Court has jurisdiction of the subject matter and the parties involved in suit.

■■ 2. The claims in suit do not define patentable invention and are an-ticipated by the prior art.

3. Claims 1, 2, 3 and 4 of U.S. Patent No. 2,587,553 are invalid.

4. Claim 1 of U.S. Patent No. 2,675,-663 is invalid.

5. Defendants have not infringed any claim in suit of U.S. Patent Nos. 2,587,-553 and 2,675,663.

6. Plaintiffs have not sustained their claims of infringement; and defendants are entitled to judgment dismissing the complaint with prejudice on its merits.

7. Defendants are entitled to judgment for their statutory costs.